UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

Matthew Cobb,      )
                   )   CIVIL ACTION
    Plaintiff,    )
                   )   04 -10390 MLW
vs.                )
                   )
Supreme Judicial Court of the Commonwealth of )
 Massachusetts by and through its             )
 individual members in their respective       )
 Official capacities, Honorable Margaret H.   )
 Marshall, C.J., John M. Greaney, J., Francis )
 X. Spina, J., Martha B. Sosman, J., Roderick )
 L. Ireland, J., Judith A. Cowin, J., and     )
 Robert J. Cordy, J.                          )

VERIFIED FIRST AMENDED COMPLAINT [1]
AS A MATTER OF COURSE FOR INJUNCTIVE RELIEF

Now comes the Plaintiff, Matthew Cobb, and, pursuant to Federal Rule of Civil Procedure 15(a), hereby files his <u>Verified First Amended Complaint As a Matter Of Course for Injunctive Relief</u>, respectfully Noting that no responsive pleading within the meaning of Rule 15(a) has been filed with the Court, nor has Judgment otherwise entered in this action. As a matter of law, all prior Pleadings are deemed withdrawn upon the filing of an Amended Pleading. <u>Wilson v. First Houston Investment Corp.</u>, 566 F.2d 1235, 1237-38 (5th.Cir.1978); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1476 (1971); <u>Levitch v. Columbia Broadcasting System</u>, 94 F.R.D. 292, 294 (S.D.N.Y.1982).

---

**Fn 1** - This Document correlates with Plaintiff's Motion / Brief Re: TRO, filed April 30, 2004, further specifying the injunctive relief sought therein.

## JURISDICTION

1) Jurisdiction of this action is conferred by 28 U.S.C. 1331, as the same arises under the Constitution and laws of the United States of America.

## PARTIES

2) The Plaintiff, Matthew Cobb, is a Citizen of the United States of America and of the Commonwealth of Massachusetts.

3) The above captioned Defendant(s) are all the individual members of the Honorable Supreme Judicial Court of the Commonwealth of Massachusetts (sometimes collectively referred to herein as the "SJC"), acting in their official capacities.

4) Though non-parties, the Massachusetts Office of Bar Counsel by and through its agents (hereinafter OBC) and the Massachusetts Board of Bar Overseers by and through its agents (hereinafter BBO), each deem themselves "official bodies subject to the supervision of the Court", meaning the SJC, and they are legally indistinguishable from the SJC in the area of lawyer governance and licensing in that they act as an administrative Division(s) of the SJC.

5) The OBC and the BBO were created by, are at least in part appointed by, are exclusively supervised by, their admissions and actions as agents exclusively enure to, and they otherwise possess no meaningful functional existence independent of their purported obligations to, the SJC

6) All authorized doings of the OBC and the BBO, and, therefore, of the SJC as captioned, at any time in the area

of lawyer governance are deemed "judicial", <u>Middlesex Co. Ethics Comm. v. Garden State Bar Association</u>, 457 U.S. 423 (1982), and all of these entities, Defendant(s), persons, or things, including their agents, will sometimes be either separately or collectively be referred to herein as the "government" or the "state".

## STANDING

7) Defendants have proximately caused Cobb to suffer palpable and distinct injuries in fact as to his fundamental substantive rights of reputational Liberty, of Property, and of Freedom of Speech, and as to his procedural rights to not be deprived of Liberty nor Property without Due Process of Law, and Cobb will soon suffer a permanent and irreparable deprivation of these rights unless the relief prayed for herein is granted.

## RIPENESS

8) Though considered "judicial" and not "administrative" under <u>Middlesex</u>, *supra*, the "proceedings" at the OBC / BBO against Cobb have finally after almost a decade ground to a halt only very recently.

9) One **last clear chance** was recently, unequivocally, and openly given by Cobb to both the BBO and OBC to withdraw its "theft" (admittedly sole disbarment) charge or Cobb would take their collective conduct public, yet they have refused.

10) Under any legal or equitable analysis, including all Abstention criteria as are summarily discussed in the above

referenced Brief, the proper time to bring this action is now, as the full measure of the bad faith and otherwise illegal motive of the OBC / BBO could have only been seen through their final refusal to withdraw / dismiss a reputation robbing knowingly false allegation of theft.

## FACTS
### The Status Quo, Equity, and Abstention

11) Cobb is presently licensed to practice law by the SJC, and has been doing so in Massachusetts continuously since approximately January, 1991.

12) Presently, the legal and equitable rights, obligations, privileges, and immunities among and between the Parties are such that Abstention by this Court is neither necessary jurisdictionally, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1982), nor otherwise proper as within its broad discretion. Younger v. Harris, 401 U.S. 37 (1971); Gibson v. Berryhill, 411 U.S. 564 (1973); Dombroski v. Pfister, 380 U.S. 479 (1965); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1986); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941); Kusper v. Pontikes, 414 U.S. 51 (1973); Bettencourt v. Board of Registration of Medicine, 904 F.2d 772 (1st.Cir.1990); Brooks v. New Hampshire Supreme Court, 80 F.3d 633 (1st.Cir.1996).

13) Apart from the several **generalized** claims embodied herein which are not subject to Abstention, none of the several **as**

      **applied** claims herein warrant abstention.

14) There is no existing "final order" of a Massachusetts Court which could divest this Court of subject matter jurisdiction under <u>Rooker-Feldman</u>.

15) There is no challenge whatsoever herein to any state statute nor regulation and therefore there is no possible SJC interpretation / invalidation thereof which might conceivably avoid the federal constitutional issues embodied herein, <u>Pullman</u>, and Cobb is prepared to Stipulate in this matter that the entire body of Massachusetts Disciplinary Regulations pass federal constitutional muster.

16) The state cannot show that Cobb has even a plausible "adequate opportunity to vindicate his federal rights", both generally and (more importantly) specifically as to him, in the state forum and the state's legal presumption to the contrary in this regard is destroyed. <u>Younger</u>, *supra*.

17) Apart from the government's manifest inability to invoke <u>Younger</u> due to the above, Cobb can additionally meet by preponderance each one of the **disjunctive** so called Younger Abstention Exceptions of bad faith, prosecutorial misconduct, judicial bias, harassment, or other unusual circumstances, including broad based generalized structural defects in a system which produces innocense so rarely as to be arbitrary under <u>Furman v. Georgia</u>, 408 U.S. 238 (1972), and the First Circuit Court of Appeals has long recognized the importance of statistical evidence in this regard. <u>Figueroa Ruiz v. Delgado</u>, 359 F.2d 718, 722 (1st.Cir.1966).

18) Lastly and most importantly, Cobb's clear ability to unveil this baseless character assassination, the balancing of the Equities herein, the irreparable damage which is guaranteed to occur if this Court stands pat, and the Public Interests, all require that this Court act to prevent outright vindictive attack on Cobb, and, therefore, on all of our sacred federal constitutional principals.

### What Is This Case, and Why Is It Here?

19) This is an action brought pursuant to 42 United States Code § 1983 for deprivation of Cobb's rights under the First and Fourteenth Amendments to the United States Constitution by the government of Massachusetts.

20) In 1994 and in 1995, Cobb engaged in speech which, as a matter of law, was of the utmost and highest public concern as recognized by the Supreme Court of the United States, <u>Landmark Communications v. Virginia</u>, 435 U.S. 829 (1978); <u>Gentile v. State Bar of Nevada</u>, 501 U.S. 1030 (1991); <u>Butterworth v. Smith</u>, 494 U.S 624 (1990), relating to the fair administration of Justice in the Courts of the Commonwealth of Massachusetts through his identification and exposure of two improper acts done, or competently and sufficiently reported to have been done, by two public officials (judges), which acts were either unethical, exhibited a manifest appearance of impropriety, were illegal, or were otherwise improper.

21) After intentional prejudicial pre-indictment delays designed to gain advantage by the government streching upwards of seven years in its own governance system which has no Statute of Limitations and is otherwise manifestly structurally deficient as detailed herein, three OBC / BBO formal disciplinary charges were combined into one disciplinary action which was then brought against Cobb in February, 2001, by the OBC / BBO to: admittedly punish Cobb for his protected conduct relating to the above speech, otherwise retaliate against Cobb for the same, chill permanently his future speech in these regards and, by public disbarment of Cobb, to then chill the speech of other lawyers in these regards when their duties require that they report or identify judicial misconduct occurring within the Massachusetts Judicial system, and to otherwise punish, discriminate and/or retaliate against Cobb for his then publically well known political stance of affording neither affluent lawyers as officers of the Court nor judges as public officials any preferred status whatsoever under the Law, or to otherwise chill any such future activity.

<u>False Pretext, Rational Relation, and Substantive Due Process</u>

22) Cobb now stands on the precipice of irreparable and permanent injury to his reputational Liberty interests through disbarment **solely** for a "theft" charge which the Defendant(s) have known, or reasonably should know by now, is not only (and at least partially admitted to be)

completely fabricated, theoretically and temporally impossible, and legally frivolous, but one which also lacks even a scintilla of competent evidence in support therefore on the very so called record created **by both** the BBO and the OBC, acting in embarrassingly open and obvious collusion with each other as respects Cobb.

23) The notion of "theft" was dreamt up by Bar Counsel, one Jane Rabe, on behalf of the Defendants and/ or those OBC / BBO agents for whom the Defendants are 100% responsible at all times, in an attempt to mask the true reason for their prosecution of Cobb as indicated above, and, of course, to discredit what Cobb had reported about the judges in question.

24) The second fundamental false pretext for the Defendant's doings is to "protect the public" and/or "the public interest / confidence in the Bar".

25) Under Landmark, Butterworth, and Gentile, *supra*, public interests of perhaps the highest order in our free society are served by **exposing** wrongdoing in the Courts in any way short of contempt (not here relevant) as Cobb did, and such public interests are disserved AMOL by hiding the same and of course by irreparably destroying the Liberty, speech, and property rights of those who expose such wrongdoing.

26) The government cannot here as a matter of law simultaneously "protect the public" by hiding, through character assination and punishment of the messenger, the wrongdoing of public officials **from** the public.

27) The government cannot here produce any evidence which can rationally relate its doings as against Cobb to its sole reason for being regarding lawyer governance, namely, the protection of the public, not only because of its above misunderstanding of what the public interests actually consist of, but also because its contemplated punishment in and of itself cannot be shown a decade on to rationally serve any public interest whatsoever.

### A Broken, Arbitrary System of Justice

28) Once formal proceedings are brought as against a lawyer admitted to or practicing in Massachusetts within the above OBC / BBO and SJC supervised governance system, a final determination of guilt as against the lawyer is assured to a statistical certainty, and the OBC, BBO, and SJC have all been aware of this fact for years, although this fact has not been openly disclosed publically by them since the early 1990's.

29) To a statistical certainty, guilt in the above described system of lawyer governance is determined as a sole function of whether formal charges are brought, and cannot be meaningfully related by regression analysis or other acceptable scientific means to any other factor or variable, including evidence.

30) Since the creation of the OBC / BBO/ SJC supervised system of lawyer governance in or around 1974, a final

determination of Innocence therein respecting all instances in which formal disciplinary actions were taken was and is so rare as to constitute an arbitrary result. <u>Furman v. Georgia</u>, 408 U.S. 238 (1972).

### Bad Faith and Prosecutorial Misconduct

31) The OBC knowingly and intentionally fabricated evidence which the BBO knew was fabricated but for which it nonetheless credited towards their common goal of convicting Cobb, including a so called "hearing" in state court which never even occurred, and for which the record of proceedings is otherwise bereft of, which hearing was not coincidentally critical to its "theft" theory.

32) Bar Counsel Rabe herself at the so called administrative "hearings" before the BBO: repeatedly falsely represented that Cobb had been directed by a state court judge to personally pay a sanction which misrepresentation was critical to the "theft" charge.

33) Rabe also in or around October 2000, in her so called "investigation" of Cobb, economically coerced by promising them money a well satisfied ex-client of Cobb's to come to BBO "hearings" and lie under oath.

34) Rabe repeatedly and intentionally misrepresented material facts to the "hearing committee", she intentionally hid or failed to present exculpatory material facts, she combined with a licensed lawyer, one Blute, to come and testify to absurd legal conclusions, she violated Cobb's right to

      privacy by telling Cobb's ex-client during an "investigation" that Cobb was "going to be suspended" because "we have a big case" then pending against Cobb when that information - apart from what it inferred insofar as rank collusion between the OBC and BBO, - was highly confidential; she simultaneously told the same then economically strapped client that Cobb in words or effect had stolen their money and that she would get it back, all in an effort to have them testify falsely on a fabricated disbarrable theft offense.

35) The BBO used a glaring double standard at the so called "hearings" wherein Cobb was harassed as to his attempt to call certain judge witnesses while BC was freely **granted** permission to call its judge witnesses, initially refused to issue subpoenas for Cobb's witnesses until approximately one business day before the hearings commenced and only at Cobb's complaint therefore.

## General Allegations

36) For nine calendar years now, Cobb has been under a continued threat of immediate suspension of his license unless he fully complied with certain compulsory process requests relating to three so called "investigations" initiated by the BBO, in the specific instances set forth herein.

37) In 1994, Cobb had accused - in Court papers seeking a reversal of her rulings - a state court judge of bias and undue influence, but only after she had: allowed and

encouraged an *ex parte* communication with the defense in a matter by agreeing to take another judge's (session) case without the knowledge nor participation of Cobb nor his client; never disclosed (as was required) the same to either Cobb or his then present client on the record; allowed and encouraged an attorney, Blute, to knowingly commit unethical acts with her full knowledge then rewarding that same lawyer and his firm with sanctions as against Cobb.

38) In 1995, Cobb reported information concerning a judge's conduct which conduct threatened the fair administration of justice in the Massachusetts courts in that it caused a witness to feign ignorance as to a material matter which he was acutely aware of. The said judge was not then acting in any judicial capacity.

39) In the above instance and in the same report, Cobb admittedly misnamed a lawyer who had also aided the witnesses' memory lapse as above.

40) More generally, the above stated circumstances relate to three separate BBO informal complaints brought against Cobb in the years 1995, 1997, and 1998, for conduct allegedly occurring in 1995, 1994, and 1998, respectively, none of which were instituted by any of his clients.

41) The combined indictment as to all these complaints did not come down until February, 2001.

42) Although two of the above said complaints ostensibly appear to have been brought by "Bar Counsel", and, despite Plaintiff's request, who brought these Complaints has never

been disclosed to Cobb.

43) Among the published rules and regulations promulgated by the SJC which exclusively relate the doings of all the above said Defendants to each other with regard to lawyer governance in Massachusetts, there is no Statute of Limitations of any kind which bars the BBO and/or BC from bringing any so called "investigatory" Complaint against any lawyer, no matter its departure in time from the alleged acts giving rise to the said Complaint.

44) Nor is there any Statute of Limitations limiting the time between the acts complained of and any indictment thereon.

45) Nor is there any Statute of Limitation limiting the total time that a lawyer in Massachusetts may be under any aspect of any such Complaint process.

46) The OBC and BBO regularly use such delays, particularly pre-indictment delays, to intentionally prejudice the defense of matters brought before them and they otherwise use such delays to advantage themselves.

47) The lack of Statutes of Limitations as above is facially unconstitutional in violation of the due process clause of the 14th Amendment to the United States Constitution.

48) The lack of Statutes of Limitations as above is unconstitutional as applied to Cobb in violation of the due process clause of the 14th Amendment to the United States Constitution because it by design allowed and otherwise fostered (approximately) six year pre-indictment delays in the only meaningful (two of the three) proceedings at issue

for advantage of OBC /BBO to the disadvantage of Cobb.

49) The statistically high percentage of routine undue pre-indictment delays comparable to the delays herein are competent evidence of the BC/BBO's intent in this regard to gain for themselves advantage thereby.

50) The statistically high percentage of stacked so called independent "Counts" in such an indictment, like Cobb's, which "Counts" span many years, **together with** the predictably following BC argument (after the close of the evidence) that an un-indicted "pattern" of conduct has occurred, or that some un-indicted "conduct as a whole" (i.e., sum of the counts) has occurred, neither of which terms can be found in the disciplinary rules, is no accident. The BC/BO joint entity for years has used this unconstitutional process to insure conviction rates in the neighborhood of approximately 99 %.

51) In Cobb's case, as per the above M.O., the "Counts" spanned many years, were stacked, the indictment was intentionally delayed for advantage, and the BC/BBO joint position of "pattern" and "conduct as a whole" was used to DISBAR, thereby invoking / instantaneously depriving - post close of the evidence - a new fundamental substantive due process right (Liberty interest in one's reputation).

52) Such extended delays increase the probability that - as in the present case - some new, routine, wholly meritless, and unrelated charge will be stacked with the prior charge, thereby aiding its routine pattern arguments.

53) Such historically longstanding, systemic, well known, and never overturned by the BBO/BC joint entity's admitted supervisor (the SJC) on due process grounds, pre-indictment delays in such proceedings cannot plausibly be construed as unintentional, and the same reflect a manifest deliberate indifference to the clearly established federal constitutional right to not be deprived of property nor Liberty without procedural due process of law while at the same time eroding any argument by the Defendant herein that "protection of the public" is rationally achieved in any plausible way through claiming years and years after the fact that an attorney who has practiced fault free in the interim must be taken off the streets, now.

54) The said pre-indictment delays have severely prejudiced Cobb for many years, both emotionally and in his job, by having unresolved ethical charges pending for so long without even a clarifying indictment which could theoretically at least be defended against.

55) As to prejudice, there was additionally a loss of a pivotal witness (Jaraki) on Cobb's behalf, and several witness for the state had substantial lapses in memory when describing events seven years prior.

56) The BC/BBO joint entity knew in Fall of 1996 that Jaraki was clearly available because as then explained to them, he was then participating in the then still ongoing lawsuit that the so called ethical violation occurred in, that he then lived out of state but was clearly available on account of

his need to then continue to participate in his lawsuit, and that he was a foreign national from Syria. That lawsuit was not settled (quite successfully) until Spring, 1998, more then three years after the event for which the undersigned was prosecuted.

57) At the so called BC/BBO joint entity hearing, Cobb was told that it his fault the witness got away, that he could have somehow combed this earth to find him and "deposed" him before formal proceedings even commenced. Apart from the absurdity of attempting to enforce an administrative "subpoena" in, most likely, Syria, this notion is really saying to Cobb that he is presumed guilty unless he can prove his innocence.

59) To date, the SJC has rejected all arguments made on federal due process grounds owing to the above said unconstitutional practice of routine and sometimes intentional delay of BBO proceedings, even rejecting such delay argument in a case where a lawyer was punished for an act some sixteen years prior.

60) Stacking as above is also unconstitutional as applied to Cobb in violation of the due process clause of the 14th Amendment to the United States Constitution via the inclusion of a fabricated disbarable offence against Cobb to support other non-disbarable stacked claims against Cobb, and the same prejudicially infected Cobb's proceedings.

61) All federal due process "staking" arguments made before the SJC have been similarly rejected.

62) To a statistical certainty, lawyers against whom formal charges (indictment) are brought by BC, and also for which there was conducted a contested so called "hearing" before some fact finding entity designated by the BBO, **are always convicted** either at the BBO final determination level or via the SJC's review process.

63) Because conviction is thereby assured to a statistical certainty upon the mere bringing of the indictment, the entire governance system described herein is structurally deficient, and otherwise arbitrary and capricious.

64) The public interests are served only by allowing however distasteful lawyers to uncover unethical practices done by lawyers or even the odd judge, and are not served by creating a system of only ostensible due process in which lawyers who spoke out against the system's esteemed members are castigated as was Cobb under the pretense of protecting the public from **them**.

65) The fact that, to a statistical certainty, all lawyer indictments in this Commonwealth by BC always result in a finding of guilt evidences a system wherein the results (guilt) cannot be related - through a regression analysis or other acceptable scientific means - to whatever evidence was presented at the hearings because the hearings all have the same result upon any evidence.

66) The system **through its results alone** as above is facially unconstitutional in violation of the 14th amendment since a fair, non-biased, non-predetermined hearing can never be

reasonably inferred from a system which always convicts, and, therefore, conviction in this illegal system is solely a function of whether an indictment is brought.

67) A fair trial is at the core of the due process clause of the 14th Amendment and the lack of the same makes irrelevant the entire Bill of Rights, including a lawyer's 1st Amendment right to speak on matters of public concern, as Cobb did, and not to be retaliated against therefore, as Cobb was.

68) The above systemwide results (statistics) themselves portend an even larger problem which is the free allowance of bad faith and/or arbitrary and capricious prosecutions, since **all** charges brought by BC, however motivated or however arbitrary, will, through either undue delay, stacking, systematic rejection of constitutional arguments by the SJC, or through systemic bias, result in a guilt finding.

69) The clear collusion between BC and the BBO, to and including the overt sharing of resources, office space, administrative staff, hearing transcripts which are shared among them but not with the accused lawyer, and through the fact that whatever charges BC brings are, to a statistical certainty, upheld by the BBO, is evidence of systemic bias which directly contributes to the non-existent acquittal rate.

70) The three "complaints" prosecuted against Cobb were done so in bad faith, and were otherwise arbitrary and capricious and were motivated by Cobb's speech on matters of public concern.

71) The hearing results against Cobb were biased, and otherwise

        predetermined from the outset.

72) The sole motivation behind the Cobb prosecution is illegal in that it is to retaliate against Cobb for his speech on a matter of public concern through his calling into question the then reasonable inferable bias of a judicial officer in 1994, and through his reporting of a highly questionable non-judicial act committed by a judicial officer in 1995.

## Count I
### 42 USC 1983

73) The Plaintiff adopts by reference all within allegations, and further alleges:

74) The above said conduct constitutes a deprivation of Cobb's constitutionally protected rights under the First and Fourteenth Amendments to the United States Constitution.

75) The actions of Defendants were fairly attributable to the State because the deprivation of Cobb's constitutionally protected rights were caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible; and because all Defendants acted together with or obtained significant aid from state officials, or because their conduct was otherwise chargeable to the state.

76) Additionally, the Defendants were otherwise acting under color of state law for the purposes of 42 U.S.C. § 1983.

WHEREFORE, the Plaintiff, Matthew Cobb, demands judgment against the Defendants as follows:

A) A prohibitory Temporary Restraining Order halting the hearing of May 6, 2004 before a Single Justice of the SJC;

B) A prohibitory Preliminary Injunction as above, including baring any SJC action on any complaint now pending against Cobb; and

C) A prohibitory Permanent Injunction as to the same, and a permanent mandatory injunction directing all disciplinary references / disbarment references to be disassociated with and otherwise removed from the SJC and BBO websites as pertains to Cobb, and

D) such other relief as the Court deems fit.

Respectfully submitted,

*Served via email to Δs' attorney this 3 May, '04 — (mc)*

_____
Matthew Cobb
Law Office of Matthew Cobb
101 Tremont Street
Boston, Massachusetts  02108
(617) 357-7300

**Verification** - I, Matthew Cobb, under pains and penalties swear that the Facts set forth above are true to the best of my knowledge and personal observation. I cannot attest to the above Opinions, nor some of the stated inferences or arguments. But the facts described I stand by so help me God. This second day of May, 2004.

_____
Matthew Cobb