UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-10390-MLW

MATTHEW COBB, ESQ.,

    Plaintiff,

v.

THE SUPREME JUDICIAL COURT OF
THE COMMONWEALTH OF
MASSACHUSETTS,

    Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED
MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff seeks to have this Court temporarily restrain a judgment of disbarment issued by a Single Justice of the Massachusetts Supreme Judicial Court for Suffolk County ("Single Justice"), which is scheduled to take effect on September 1, 2004.  Plaintiff has filed this action under 42 U.S.C. § 1983, alleging that the Justices of the Massachusetts Supreme Judicial Court ("Justices") acting in their official capacities have deprived him of his rights under the First and Fourteenth Amendments of the United States Constitution based on their supervision of the Massachusetts Board of Bar Overseers ("BBO") and the Massachusetts Office of Bar Counsel ("Bar Counsel").  (Verified First Amended Complaint, ¶ 3-5, 74, 75.)

This Court should deny Plaintiff's Motion for several reasons.  First, Plaintiff has no likelihood of succeeding on the merits of his claim because it is barred by the Younger abstention doctrine and he has no likelihood of success in showing that the Justices have acted in bad faith or in a harassing manner.  In fact, the Verified Amended Complaint focuses extensively on the conduct of the BBO and Bar Counsel both of which Plaintiff freely concedes are "non-parties" to

this Action. (Verified First Amended Complaint at ¶ 4.) Second, the imminent threat of irreparable harm advanced by Plaintiff here (his impending September 1, 2004 disbarment) is being acquiesced in by his own failure to move in the state-court proceeding for a stay of the August 2, 2004 judgment. San Francisco Real Estate Investors v. Real Estate Investment Trust of America, 692 F.2d 814, 818 (1st Cir. 1982) (injunction vacated because self-inflicted harm was not irreparable, nor was it unavoidable absent injunction). Third, entry of a preliminary injunction would harm the public interest given the Single Justice's conclusion that Plaintiff's disbarment is appropriate given, inter alia, the Plaintiff's "[p]articularly unprofessional and egregious . . . conduct to his own clients . . . . [that results in] harm [that] extends beyond those initially affected, his clients, and result in disgracing the profession and undermining the public confidence and trust in the bar." ( Plaintiff's Brief in Support of Renewed Motion for Temporary Restraining Order, Ex. B, at 21-22.)

## ARGUMENT

**I.   PRELIMINARY INJUNCTION STANDARD.**

As this Court has stated:

> "The standard for obtaining a preliminary injunction is familiar. The burden of proof is on the plaintiff. The court is required to weigh four factors. The first is whether the plaintiffs has shown a likelihood of success on the merits. The second is whether the plaintiff has established an imminent threat of irreparable harm in the absence of a preliminary injunction. The court is also required to balance the hardship to the plaintiff if no injunction is issued against the hardship to the defendants if the requested injunction is ordered. In addition, the court must consider the effect of the proposed injunction on the public interest.
> As the Court of Appeals for the First Circuit has said on a number of occasions, the likelihood of success on the merits is of primary importance. It is the sine qua non for obtaining a preliminary injunction. If a great showing of likely success on the merits is made by a plaintiff, a reduced showing of irreparable harm may be appropriate.

> In addition, a preliminary injunction is an equitable remedy. It does not issue automatically even if the foregoing criteria indicate that an injunction is warranted. Thus, a court may properly consider any inequitable conduct by the plaintiff. The court may also consider any adverse impact on the public interest for which a bond cannot compensate and withhold relief for this reason alone. Fed. R. oc Civ. P. 65(c) requires a prevailing plaintiff to post a bond to pay for costs and damages that may be suffered by defendants in the defendants later prevail on the merits of the case."

Hannon v. Allen, 241 F. Supp. 2d 71 (D. Mass. 2003) (citations omitted).

## II. PLAINTIFF HAS NO LIKELIHOOD OF SUCCEEDING ON THE MERITS OF HIS SECTION 1983 CLAIM AGAINST THE JUSTICES OF THE SUPREME JUDICIAL COURT.

Plaintiff has no likelihood of succeeding on the merits of his claim under 42 U.S.C. § 1983, for several reasons. First, as set forth in the Defendants' Motion to Dismiss and Supporting Memorandum (filed with this Court on May 4, 2004 and incorporated herein by reference) the Younger abstention doctrine requires dismissal of this action. In short, Younger abstention is appropriate here because Plaintiff is seeking this Court to intervene in: (1) a state-court judicial proceeding (the enforcement of a judgment issued by the Single Justice); (2) a proceeding that implicates the Commonwealth's "'extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses;'" and (3) a proceeding that provides an adequate opportunity for Plaintiffs to raise his federal constitutional claims. Johnson v. Board of Bar Overseers of Massachusetts, ___ F. Supp.2d ___, 2004 WL 1293891, at *5-7 (D.Mass. 2004) (Young, C.J.), on appeal No. 04-1833 (1st Cir.).

Additionally, to the extent that Plaintiff seeks to assert the bias/bad-faith exception to the Younger abstention doctrine he still has no likelihood of succeeding on the merits. Here, Plaintiff's claim focuses on the Justices not the BBO or Bar Counsel. (See Verified First

Amended Complaint, ¶ 3). But, the conduct and acts about which he complains are those of the BBO and Bar Counsel, which he concedes are "non-parties" to this Action. (See Verified First Amended Complaint, ¶ 4-6, 26-72). He has not sued the BBO and Bar Counsel; rather he has sued only the Justices in their official capacities. (Id., ¶¶ 4, 5.) Except for conclusory and speculative statements regarding the Justices, Plaintiff has provided no evidence supporting this motion that can be reasonably construed to indicate a likelihood of success on the merits of the bad-faith/bias claim against the Justices.[1] Out of the 77-page Plaintiff's Verified Brief only the following three passages touch upon the purported bad-faith/bias conduct of the Justices:

- "This is not to suggest that the ex-judge, present Justice's [Sosman] presence as above on the SJC constitutes any absolute bar to that court hearing the matter of Cobb's discipline for saying she was biased and potentially influenced simply as judges by her actions. However, it certainly does not reasonably help Cobb's chances when the prior conduct under the judicial code of a trusted colleagues on the court is to be judge by her court colleagues, as it must be under First Amendment Law as set forth below entitling Cobb to develop just such a record.
    The court we can assume already has an obviously high view of its sister Justice's ethical mores and character, and any attack upon the same will likely be met, as it has invariably thus far, with more content based reprisal, not a truly objective analysis." (Plaintiff's Verified Brief at 20.)

---

[1]   It should be noted that Plaintiff's Renewed Motion for Temporary Restraining Order and Plaintiff's Brief in Support of Renewed Motion for Temporary Restraining Order are not verified and he submitted no accompanying affidavits. "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support . . . a motion for a preliminary injunction." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949, at 214 (2d ed. 1995). See, e.g., Eyler v. Bacox, 582 F. Supp. 981, 986 (D.N.D. Ill. 1983) (concluding that "allegations . . . neither contained in a verified pleading nor supported by affidavit" cannot serve as the basis of the issuance of a preliminary injunction); Bossert v. Springfield Group, Inc., 579 F. Supp. 56, 58 n.2 (S.D. Ohio 1984) (same); see also Local Rule 7.1(B)(1) ("A party filing a motion shall at the same time file a memorandum of reasons . . . why the motion should be granted. Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion" (emphasis added)). By failing to inform the Court and the defendants what specific facts he relies upon to now seek injunctive relief, Plaintiff prevents meaningful review of his claim and puts Defendants in the position of defending against a factually-unsupported claim of bad-faith conduct by the Justices.

- "Yet, when [Cobb] then personally went to the Clerk's Office of the SJC to obtain the required Certificate in Good Standing to submit the U.S. Supreme Court, he was summarily Denied the Certificate, notwithstanding the fact the he was in good standing.  Upon further inquiry, Cobb learned several days later, again in person and from the Clerk, that the Certificate would not issue for so long as the BBO 'matter' was pending.  Cobb went ahead though and submitted the application [sic] the Supreme Court.  Some time later, most likely a week or so, Cobb spoke to the Clerk of the Supreme Court, who said that he had made inquiry and was told by the SJC that it would not issue the Certificate because of the pending mater(s) before the BBO (one involving the report of the judge, the other, a baseless, non-speech related claim soon dismissed).  Now, in view of the fact that Cobb at all times was member in good standing, he was deserved of the certificate, and the summary denial of the same is an inference of bias exhibited towards him, even then, by the SJC." (Plaintiff's Verified Brief at 22.)

- "But the worst of the specific bias, indeed, a rank appearance of unfairness, from the SJC towards Cobb of late was its appointment of one of the state's key witnesses (a "victim" of Cobb, no less) at the BBO to the BBO itself WHILE COBB'S PROCEEDINGS WERE STILL ONGOING AND BEFORE THE BBO PASSED JUDGMENT ON THE MATTER.
    It is neigh impossible to say what a far reaching signal such an appointment would be to the gentleman's (Mr. Rose) colleagues on the Board.  He is given the Official State high court stamp of ethical approval, meaning his track record is devoid of ethical misconduct.  Yet part of the issued [sic] addressed in the Cobb matter impinged greatly upon his and his law partner's undisputed unethical conduct which the then trial judge freely allowed and encouraged.  The Board could therefore rest assured, as it did when recommending disbarment, that everything said by Cobb about Rose, his partner, Blute, and the judge must be folly, since ITS ADMITTED SUPERVISOR, the SJC, had said beyond purview that this man, and implicitly his then law firm and partners, has always been beyond ethical reproach." (Plaintiff's Verified Brief at 22-23.)

These generalized statements are not enough to meet Plaintiff's heavy burden of showing a likelihood of success on the merits of his bad-faith/bias claim.

"To invoke the 'bias' exception to the <u>Younger</u> abstention doctrine, . . . a plaintiff [first must] seek to recuse allegedly biased judges in the state proceeding." <u>Johnson</u>, 2004 WL 1293891 at * 7 (citing <u>Brooks v. New Hampshire Supreme Court</u>, 80 F.3d 633, 639-40 (1st Cir. 1996).  In the preliminary injunction record here, there is no sworn statement that Plaintiff moved

to recuse Attorney Rose in the BBO proceeding, after he was appointed to the BBO, nor is there any sworn statement that Plaintiff has moved to recuse Justice Sosman in the state-court action. Moreover, nothing in the preliminary injunction record indicates that either Attorney Rose or Justice Sosman have participated in either proceeding in an adjudicatory capacity. Accordingly, Plaintiff has no likelihood of meeting the first requirement of the bias exception to the Younger doctrine.

Even if Plaintiff could reach the second prong, he still does not have a likelihood of prevailing on his bias claim. Plaintiff "must offer 'some evidence that abstention will jeopardize [her] due process right to an impartial adjudication.' 'To implicate due process, claims of general institutional bias must be harnessed to a further showing, such as a potential conflict of interest, or a pecuniary stake in the outcome of the litigation.'" Johnson 2004 WL 1293891, at *7 (quoting Brooks, 80 F.3d at 640). Plaintiff has made no such showing in the preliminary injunction record here. Other than his generalized claims of bias on behalf of the SJC, he has not presented any evidence showing a potential conflict of interest on behalf of the Justice nor that any of the Justices stand to gain or benefit from the outcome of state-court action. In short, his bias claim is speculative and based on no concrete facts that appear in the preliminary injunction record. Accordingly, Plaintiff has no likelihood of prevailing on the bias claim.

### III. THE PUBLIC INTEREST FAVORS DENYING PLAINTIFF'S MOTION GIVEN THE "PARTICULARLY UNPROFESSIONAL AND EGREGIOUS" CONDUCT TO HIS CLIENTS THAT UNDERLIES THE ORDER OF DISBARMENT.

In concluding that Plaintiff should be disbarred, the Single Justice issued a strong condemnation of Plaintiff's conduct as a lawyer to his clients, other members of the bar, and the judiciary. Paramount in the Single Justice's conclusion was his concern about Plaintiff's

"egregious" conduct to his clients which "offends [the legal profession's] sacred standards," and resulted in a "harm . . . that extends beyond those initially affected, his clients, and results in disgracing the profession and undermining the public confidence and trust in the bar." Memorandum and Order at 22. The public interest here would not be served by this Court intervening in the state-court proceeding to permit Plaintiff to continue practicing law given his "inability to faithfully discharge his ethical duties in practicing law in the Commonwealth . . . ." Memorandum and Order at 23.

## CONCLUSION

For the reasons set forth above, this Court should deny the Plaintiff's Renewed Motion for a Temporary Restraining Order.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

_____/s/_____
John R. Hitt, BBO #567235
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, MA 02108
(617) 727-2200, ext. 2995

Dated: August 23, 2004

**Certificate of Service**

I certify that this document will be served on Plaintiff by First Class Mail and fax (if possible) on August 24, 2004.

_____/s/_____
John R. Hitt, AAG 8/23/04