UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

Matthew Cobb,

    Plaintiff,

vs.

Supreme Judicial Court, et al.,

    Defendants

CIVIL ACTION

04  10390  MLW

PLAINTIFF'S REPLY BRIEF
RE: DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR TRO.

Now comes the Plaintiff, Matthew Cobb, and, for his Reply to Defendants' Opposition to Plaintiff's Renewed Motion for Temporary Restraining Order respectfully submits that:

Reply Issue No. 1 -

In the case of Johnson v. BBO, et al., 2004 U.S. Dist. LEXIS 9520, May 26, 2004 (C.J., William G. Young), Exhibit "G" hereto, the Massachusetts Attorney general on behalf of the BBO, Bar Counsel, and the Commonwealth of Massachusetts, has argued that "the ongoing state disciplinary action is judicial in nature". See No. 03-12314, Defendant's Memorandum in Support of Motion to Dismiss, at p. 4. This is a correct position on the Law under Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982). Middlesex, as seen below, however is premised upon the notion that State lawyer

disciplinary proceedings while appearing "administrative" are in fact judicial, since the High Court of each of these United States is "responsible" for all that goes on in the ostensibly administrative proceedings. As such, to argue that such proceedings in the Johnson matter were "judicial" is to accept the premise of Middlesex.

Here, all of a sudden Cobb is claimed to have a fatal fault by not naming the BBO / Bar Counsel to these proceedings. The reasoning is that the SJC is not responsible for what the BBO / Bar Counsel did. Cobb removed the BBO and Bar Counsel from this action by dent of his Amended Complaint as a matter of course. The reason why they were removed is because the undersigned finally understood what Middlesex actually meant in this connection. Namely, that we need not "attribute" the conduct of the BBO / Bar Counsel to the SJC because *as a matter of Law* the U.S. Supreme Court has held that such State Court is "responsible" for all done at these administrative proceedings.

In our democratic society - state or federal - the three co-equal branches of government (executive, judicial, and legislative) are not political subdivisions and/or agencies of the government to which they belong, rather, they are *ipso facto* the government. Such a democratic government as we know it does not exist but for its three co-equal branches. There is no Super entity which rules over the said three branches within their own

sovereign sphere as such, nor could there be lest we dispense forever with the notion of checks and balances.

Here we are dealing with the Massachusetts High Court, and, therefore, with the State of Massachusetts itself, both legally and practically. If this point be not otherwise inherently obvious from the democratic structure of the Massachusetts Government itself, then we can turn to <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423 (1982), wherein the U.S. Supreme Court held that a State's High Judiciary was fundamentally and unqualifiedly responsible for all acts - whether couched as administrative or not - done in lawyer disciplinary proceedings. Apart from acts done by the SJC Justices themselves here which are independent of the present attributional analysis, <u>Middlesex</u> permeates this entire case since it lays the blame (read: responsibility) for the known unconscionable acts of the SJC's manifestly authorized staff (BBO / Bar Counsel) squarely where it by rights belongs, at the SJC's, and, hence, the State of Massachusetts' doorstep. To wit at id., 433-(1982), the Court held that:

> The New Jersey Supreme Court has made clear that filing a complaint with the local Ethics and Grievance Committee "is in effect a filing with the Supreme Court . . . ." Toft v. Ketchum, 18 N. J. 280, 284, 113 A. 2d 671, 674, cert. denied, 350 U.S. 887 (1955). "From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." n12 18 N. J., at 284, 113 A. 2d, at 674. It is clear beyond

doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as "judicial in nature." n13 As such, the proceedings are of a character to warrant federal-court deference. The remaining inquiries are whether important state interests are implicated so as to warrant federal-court abstention and whether the federal plaintiff has an adequate opportunity to present the federal challenge.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n11 See M. Shoaf, State Disciplinary Enforcement Systems Structural Survey (ABA National Center for Professional Responsibility 1980).
The New Jersey allocation of responsibility is consistent with ? 2.1 of the ABA Standards for Lawyer Discipline and Disability Proceedings (Proposed Draft 1978), which states that the "[ultimate] and exclusive responsibility within a state for the structure and administration of the lawyer discipline and disability system and the disposition of individual cases is within the inherent power of the highest court of the state."
The rationale for vesting responsibility with the judiciary is that the practice of law "is so directly connected and bound up with the exercise of judicial power and the administration of justice that the right to define and regulate it naturally and logically belongs to the judicial department." Id., commentary to ? 2.1.
n12 The New Jersey Supreme Court has concluded that bar disciplinary proceedings are neither criminal nor civil in nature, but rather are sui generis. In re Logan, 70 N. J. 222, 358 A. 2d 787 (1976). See also ABA Standards for Lawyer Discipline and Disability Proceedings ? 1.2 (Proposed Draft 1978). As recognized in Juidice v. Vail, 430 U.S. 327 (1977), however, whether the proceeding "is labeled civil, quasi-criminal, or criminal in nature," the salient fact is whether federal-court interference would unduly interfere with the legitimate activities of the state. Id., at 335-336.
The instant case arose before the 1978 rule change. In 1978 the New Jersey Supreme Court established a Disciplinary Review Board charged with review of findings of District Ethics Committees. Nothing in this rule change, however, altered the nature of such proceedings. The responsibility under Art. 6, ? 2, para. 3, remains with the New Jersey Supreme Court.
n13 The role of local ethics or bar association committees may be analogized to the function of a special master.

Anonymous v. Association of Bar of City of New York, 515 F.2d 427 (CA2), cert. denied, 423 U.S. 863 (1975). The essentially judicial nature of disciplinary actions in New Jersey has been recognized previously by the federal courts.

The reason why State Judiciaries under <u>Middlesex</u>, supra, are "responsible" for all such acts is because they are receiving the clear benefit of near complete autonomy (causing Younger Abstention to therefore become applicable) in their stem to stern regulation of lawyer disciplinary proceedings as "judicial". The entire basis for the Rule in <u>Middlesex</u> was grounded upon this "responsibility", used as it were to rationalize treating as "judicial" what were previously deemed "administrative" doings of the various State entities regulating the practice of Law. This Rule is certainly consistent with the fundamental notion that for every benefit there must always be an obligation. So, the acts of the SJC itself, either directly or by and through the doings of its lawyer governance system, all are "judicial" acts, for which it is responsible.

Reply Issue No. 2 -

Despite Plaintiff's continued open invitation to do so, and despite what appeared to be an unqualified representation(s) to this Court on May 5, 2004 by the Defendants that the Honorable Single Justice of the SJC would consider all federal issues which Cobb had then raised at the said May 5, 2004 hearing, Defendants

have again completely ignored and avoided the core and exclusive disbarment issue in this matter. Namely, the alleged "theft" and their complete lack of a *prima facie* case relating thereto. As this Court stated on May 5, 2004, it then lacked sufficient evidentiary materials to then make an informed decision. As such, Plaintiff has constructed a hopefully helpful, documented supported, and undisputed time line showing that at no time did he ever even temporarily possess any money of his client in a wrongful or unauthorized fashion, something which the Defense in this matter has all but acquiesced to through such continued avoidance of this controlling issue. These are represented by the attached Exhibits "A" - "F", and "H".

"A" -     This was the Order ordering Cobb to pay personally a four thousand dollar sanction, dated 8/12/94. It is uncontested on the BBO record that Cobb's clients had both been present at a 2/2/94 hearing where the Judge had said at least two or three times clearly that it was going to be Cobb, and not his client, who should pay.

"B' -     Single Justice Lawrence's Order, specifically under MRAP 25, which does not authorize sanctions against the lawyer, dated October 20, 1994. This is when Cobb's

client's obligation to pay undisputedly accrued. The BBO / Bar Counsel, and now even the Single Justice have finally all acquiesced (by no longer pursuing any notion that the Order was specific to Cobb) to the fact that this Order was not against Cobb, specifically nor by implication.

"C" – Superior Court Judge Herman Smith's Order of April 28, 1995, specifically enforcing both of the above orders, then simply putting a time certain on the payments to be made by both Cobb (Via Judge Sosman's Order) and "Cobb's Client" (via Justice Lawrence). It is uncontested that this payment as below was properly made under this order.

"D" – The Check from Cobb's client which was used to defray the sanction payment then made as below, dated April 28, 2004.

"E" – Payment communication with attached payment pursuant to Judge Smith's Order as above, dated June 25, 1995.

"F" – Full Panel Appeals Court Decision. The last paragraph of the decision apparently is what caused this entire mess, as Bar Counsel assumed that there was such an Order specifically directing Cobb to pay the Justice Lawrence Sanction. This was addressed in detail in Cobb's Brief in Support of TRO, filed in April 2004,

>           which is adopted herein by reference pursuant to
>           F.R.Civ.P. 10(c). A court cannot "affirm" that which
>           never occurred, among other arguments there made.
>
> "H" -     Bar Counsel's sworn admission that she had no clue
>           before publically calling Cobb a thief that the Smith
>           Order as above existed, nor that there was not any
>           Order (as she alleged in the indictment) of the Single
>           Appeals Justice Ordering Cobb to make such payment.

This case is not against a municipality under § 1983, which the Supreme Court there allowed in a federal Court under limited conditions. If <u>Monell</u> did have any bearing here, then we could treat the SJC, the BBO, and the OBC, all as entity Parties, and we would view their conduct under a typical <u>Monell</u> analysis focusing on deliberate indifference, custom, policy, and moving force. See <u>Gonsalves v. City of New Bedford</u>, 939 F. Supp. 915 (D.MA.1996), FN 3. Rather, this is an action brought under the principal of <u>Ex Parte Young</u>, 209 U.S. 123 (1908), for prospective injunctive relief against government Officials solely in their capacity as such.

The state argues on the one hand that the non-inclusion of the BBO and OBC is somehow fatal to Cobb's claims, yet it certainly already knows that the BBO and the OBC (as institutional Defendants created by legislative act of the SJC

like the IOLTA Committee was) are not considered proper parties here under the 11th Amendment to the United States Constitution. See the related <u>Citizens for the Preservation of Constitutional Rights v. SJC</u> matter, No. 02-10125, MLW, wherein the SJC there acquiesced that the said IOLTA Committee for the same reason was not a proper Party under <u>Pennhurst v. State School & Hospital v. Halderman</u>, 465 U.S. 89 (1984).

What we are really looking at here is whether the SJC may on the one hand through Legislative Act create the BBO and the OBC to aid it in effecting its sole and unquestioned authority to regulate the practice of law, while on the other hand, then turn a blind eye to either or both the specific or general practices of those entities, then claiming that the victim must prove "vicarious liability". While it is true that a state judiciary may unquestionably delegate these functions to the BBO /OBC which inherently and exclusively belonging to it, it cannot thereby lay claim to any level whatsoever of non-responsibility for their doings. And the reason is quite simple in the Law, namely, that they are all one in the same.

In <u>Middlesex Co. Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423, 433-34 (1982), the Court held that:

The New Jersey Supreme Court has made clear that filing a complaint with the local Ethics and Grievance Committee **"is in effect a filing with the Supreme Court . . . ."** Toft v. Ketchum, 18 N. J. 280, 284, 113 A. 2d 671, 674, cert. denied, 350 U.S. 887

(1955). "From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee." n12 18 N. J., at 284, 113 A. 2d, at 674. It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as "judicial in nature." n13. As such, the proceedings are of a character to warrant federal-court deference. The remaining inquiries are whether important state interests are implicated so as to warrant federal-court abstention and whether the federal plaintiff has an adequate opportunity to present the federal challenge.

>   n11 See M. Shoaf, State Disciplinary Enforcement Systems Structural Survey (ABA National Center for Professional Responsibility 1980).
>
>   The New Jersey **allocation of responsibility is consistent with § 2.1 of the ABA Standards for Lawyer Discipline** and Disability Proceedings (Proposed Draft 1978), which states that the "**[ultimate] and exclusive responsibility within a state for the structure and administration of the lawyer discipline and disability system and the disposition of individual cases is within the inherent power of the highest court of the state.**"
>
>   The rationale for **vesting responsibility with the judiciary** is that the practice of law "is so directly connected and bound up with the exercise of judicial power and the administration of justice that the right to define and regulate it naturally and logically belongs to the judicial department." Id., commentary to § 2.1.

With every right in the Law, there is always a responsibility. If <u>Middlesex</u> stands for anything, it is that whatever proper and fitting cloak is thrown over the ways that a state judiciary may regulate the practice of law - by creating entities or even by farming out the fact finding determination to existing bodies wholly without the Judicial function - the fact remains that the judiciary and only the judiciary is responsible for this function. The buck stops at the SJC.

The above is not vicarious responsibility, rather, it the recognition that the OBC and BBO's acts are the acts of the SJC *ipso facto*. What Cobb therefore asks for here is enjoinment of the SJC as captioned to prevent it from sustaining wholly unconstitutional doings by a thing or things it created and for which it is 100% responsible, because under Middlesex, they are as a matter of law the acts of the SJC itself.

Moreover, and as to the non-inclusion of BBO Committee Members themselves as Parties hereto in their Official Capacities, there is no statutory authority or otherwise for them to do anything which could undo their recent adoption of the doings of the "hearing committee" and the "Appeal panel" of the BBO. If Cobb **had** included them no doubt would the state then claim that **they** were not vicariously liable for the doings of **their** underlings so to speak at the "hearing committee" and the "Appeal panel" levels.

More importantly, it is here material to bad faith that the BBO itself was given a last, clear, unequivocal opportunity to belatedly withdraw the false name destroying theft charge which it knew to be false, or that Cobb would take this action. Little doubt that had Cobb sought to enjoin these BBO members prior to their recent actions, he would be met with the same argument as here, namely, that Cobb simply did not give them a chance to act just like he has allegedly not given the SJC a chance to act.

Under Middlesex, since the entire proceedings stem to stern are "judicial" then all of the exact same Younger considerations came into play anyway from the outset and it is irrelevant therefore when the federal action moves in, except as to likelihood of success on the merits of the BBO well knowing and refusing to subtract a false theft claim which Cobb reasonably believed it could do, even when they were alerted that the same rode upon a BC'c / BBO "hearing committee" or "appeal panel" "finding" of a supposed state court hearing which never even occurred and for which the record was bereft of evidence wise.

Cobb would not filed this case if only his practice was destroyed which has occurred even without the withdrawal of the theft charge, as that practice has wound down for the last 39 months. He is here to save the unconscionable complete and utter destruction of his reputation by **the state judiciary** to punish him for criticizing **those within the judiciary**, a right protected under the First Amendment to the U.S. Constitution as briefed. If Landmark, Gentile, and Butterworth, all cited in Cobb's April Moving Brief, stand for anything, it is that no public official, particularly a judge or a lawyer as officer of the court, attains any preferred status whatsoever from truth based public criticism that their deeds were prejudicial to the administration of justice, **and that** hiding these deeds or shooting the messenger who reports them is AMOL prejudicial to the fair administration

of Justice. All Cobb did for which he now stands disbarred by the state was to do what he was taught to do all his life and in law school to do, namely, stand up for your rights under the constitution even when it hurts to stand.

Respectfully submitted,

*/s/ Matthew* 8/26/04

Matthew Cobb
P.O. Box 2093
Acton, Massachusetts 01720
(617) 357-7300 or (978) 985-7523 (cell)

*By Hand + email to A's counsel*