UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

Matthew Cobb,                              )
                                           )   CIVIL ACTION
    Plaintiff,                             )
                                           )   04   10390   MLW
vs.                                        )
                                           )
Honorable Margaret H. Marshall, et al.,    )
                                           )
    Defendants.                            )

PLAINTIFF'S FRCivP 15(d) MOTION FOR LEAVE TO FILE
SECOND AMENDED AND SUPPLEMENTAL COMPLAINT,
TOGETHER WITH POINTS AND AUTHORITIES IN SUPPORT THEREOF

On August 27, 2004, this Court held a hearing on Cobb's Renewed Motion for TRO. At that time, the Court inquired specifically into whether the Complaint (First Amended) had sufficiently alleged facts supporting the Younger bad faith exceptions. Plaintiff certainly was given then as always a fair hearing by the Court, and does not by this paper suggest otherwise.

Cobb would like to point out the following however:

1)  It is true, although Cobb was not bright enough on August 27th to so mention this to the Court, that events post filing of this Complaint have occurred which support his argument - wholly independent of Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982) - that the SJC as Defendants are here responsible for

the sufficiently alleged bad faith by the BBO / Office of Bar Counsel (OBC). Namely, the August 2, 2004 Opinion by the Honorable Justice Greaney was a wholesale adoption and ratification by the Court of the BBO and OBC doings. It's effect is now, and not later when the Full SJC rules. This effect is not unlike an execution by the Court, namely, disbarment was ordered.

2) Moreover, it's not like Cobb is hanging on the notion that the State lacks evidence of "actual deprivation" of conversion for some sinister, convenient, or dishonest reason. He is hanging on its because he cannot win credibility assessments, and that such point in fact depends not on credibility. It was pointed out and is undisputed that the prosecution had no clue of the operative court orders authorizing / ordering Cobb to act as he did before it accused Cobb of being a thief. Please see last Exhibit to Cobb's Reply Brief filed August 26th. The lie thus concocted - i.e., that Cobb attempted to make his client pay for something he should not have - has in the end been exposed by the truth, namely, that this could have never occurred practically and legally since the obligation for the Client to pay (which Bar Counsel was unaware of when the scheme was concocted) always preceded any payment.

3) Cobb also forgot to mention to the Court when asked the

systematic delays on Friday, but they were obviously pled in the Amended Complaint and argued in his huge May, 2004 "Brief".

4) And while Cobb said he needed little discovery, he never said he lacked evidence for trial. Much of such evidence is of public record, and includes formally prosecuting him for the fact that he was "sanctioned" in court, while not doing so to the many, many, other "sanctions" cases routinely and publically reported in Mass. Lawyer's Weekly and the reported court decisions (relevant to pretext to punish for protected speech), all of which are read by the BBO / OBC; the high percentage of cases brought with stacked claims and huge near decade long delays (relevant to any BBO / OBC argument that this is done unintentionally and not to gain undue advantage, which is unconstitutional as pointed out in the May brief); testimony from Ms. Nutile that she was told certain things clearly indicative of prosecutorial misconduct pre-indictment.

5) Friday was not a trial, nor did the undersigned have any reason to believe it was going to be in advance. There must be a middle ground between outright Dismissal and Granting of the TRO. Cobb had only asked for temporary relief until the trial (which seemed as if it was going to be scheduled). Cobb was not asked for an offer of proof for trial.

6)  It seems that if any reasonably minded judge were faced with (let's assume a criminal) jury verdict of "conversion", yet that claim pursuant to his jury charge had an "actual or wrongful deprivation" element, on this record where there is none, that he would have to direct out the verdict. That's the only point being made by Cobb here as to substantive due process. The damage is irreparable, disbarment. It is being inflicted admittedly on a sole charge which a reasonable judge would know is not supported by the evidence found, credibility notwithstanding. The evidence that Cobb attempted to rip off his client - clearly false but Cobb can't attack it's credibility here - is irrelevant to the lack of a prima facie case re: actual/ wrongful deprivation, temporary or permanently. Thus, its not just that the Court (SJC) has now adopted / ratified unconstitutional doings of the BBO / OBC adequately plead and, thus, is responsible for such adopted position, but that, additionally, a Judge as skilled and intelligent as any on the SJC, Justice Greaney, would know beyond purview that there is no actual deprivation. The disbarment in the fact of this knowledge is evidence of bad faith, as it reflects a desire to disbar for something that cannot be sustained (theft). This is arbitrary and capricious, is evidence of pretext re: speech (below) and is unconscionable given the gravity of the

penalty and dearth of evidence.

7) This entire case is about prosecuting Cobb for his free speech. The same was plead. The rationale to disbar Cobb is suspect, rather, nonexistent. So, continued prosecution for a stated false reason is evidence that the same is to punish for speech, which was clearly plead and argued. The Single Justice did not talk substance on the prima facie speech nor the safe harbor aspects raised by Cobb, both here determinative.

8) While the Court and Cobb on August 27th discussed differences between the so called third prong of the Younger Abstention prima facie case (State's burden) and the Younger "exceptions", the fact remains that if the exceptions were identical to the said third prong, then we obviously would never need the exceptions. Cobb – which he has not – could concede the said third prong, and still argue the exceptions.

9) There is no valid abstention premise in any event for those generalized constitutional claims made by Cobb. These include the so called structural deficiencies like undue intentional delay, systematic "stacking", and inability for any accused lawyer to a statistical certainty to actual prevail at these "hearings". Abstention applies only to "as applied" to Cobb arguments.

In <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, at 485, the Court held:

> The Court of Appeals for the Tenth Circuit in Doe v. Pringle, supra, properly emphasized the distinction between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission. We have recognized that HN21state supreme courts may act in a nonjudicial capacity in promulgating rules regulating the bar. See, e. g., Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 731 (1980); Lathrop v. Donohue, 367 U.S., at 827 (plurality opinion); In re Summers, 325 U.S., at 566. HN22Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding. Instead, the district court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding. If this is the case, the district court is not reviewing a state-court judicial decision. In this regard, 28 U. S. C. § 1257 does not act as a bar to the district court's consideration of the case and because the proceedings giving rise to the rule are nonjudicial the policies prohibiting United States district court review of final state-court judgments are not implicated. United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U. S. C. § 1257.

While Cobb has no challenges to any State statute as such, he has certainly included generalized challenges to its unconstitutional process which encourages these systematic delays, "stackings", and of course, the generalized statistically daunting conviction rate.

10) In both his Reply Brief to Defendants' May, 2004 Opposition

to his Motion for (then) TRO and in his recent reply Brief to re: Plaintiff's Renewed Brief in support of TRO, Cobb set forth the specific language of <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423 (1982). FN 11 as cited therein. He urges the Court to adopt this manifest position of the U.S. Supreme Court. If these proceedings at the BBO were always "judicial" per Middlesex, as they were, then is was irrelevant when this action was brought, since the Younger criteria would always apply. Had Cobb sued when the proceedings were ongoing at the BBO, and we then applied the Younger bad faith exceptions to the facts alleged as committed by the BBO as detailed in all Cobb Briefs and Complaints, then it was manifest that we would be reviewing the conduct of the BBO itself as bad faith. This does not change simply because the BBO finished its doings. The fact that the BBO proceedings are concluded is therefore irrelevant to this analysis. We still look at what it did, and we do so still under Middlesex which says that the State High Court is responsible for these administrative doings.

11) In view of the above, a Proposed Second Amended and Supplemental Complaint is submitted herewith. In the name of Justice, Cobb asks that it be allowed to be filed. The same details the supplemental acts of the Single Justice, and,

furthermore, more clearly spells out the specific misconduct upon which his Younger bad faith arguments are based.

WHEREFORE, Cobb respectfully asks that this Motion be Allowed.

Respectfully submitted,

*[signature]*

Matthew Cobb
P.O. Box 2093
Acton, MA
(617)357-7300 or (978)985-7523 cell

*[handwritten: Served on OSMed ← email 8/30/04 (MC)]*